UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                      :

CITIGROUP INC.,                                                                  :
                                      :
                        Petitioner,                       :

                                      :                                21 Civ. 10413 (JPC)
         -v-                                                              :
                                      :                                OPINION AND
LUIS SEBASTIAN SAYEG SEADE,                                      :                                ORDER
                                      :
                      Respondent.                    :
                                      :
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Before the Court is Petitioner Citigroup Inc.'s motion to hold Respondent Luis Sebastian

Sayeg Saede ("Sayeg") in civil contempt for violating this Court's Orders.  As background, on

January 20, 2022, the Court issued an Opinion and Order that granted Citigroup's unopposed

motion to compel arbitration, directed Sayeg to participate in that arbitration, and ordered Sayeg

to withdraw any pending claims that he has brought in Mexico in an action captioned as *Luis

Sebastián Sayeg Seade v. Banco Nacional de México, S.A., Integrante del Grupo Financiero

Banamex*, Expediente Número: 1197/2020 ("Mexican Action"), that fall within the scope of the

parties' arbitration agreements.  Dkt. 33 ("Opinion") at 8-19.  The Court also stayed this case

pending arbitration, except for enforcing the ordered injunctive relief, considering any further

requests for injunctive relief, and considering applications for sanctions for failure to comply with

the Court's Orders.  *Id.* at 19.  That same day, the Court issued a Preliminary Injunction that

directed Sayeg "by February 3, 2022, to dismiss without prejudice claims arising out of or related

to the applicability or not applicability of benefits under the Plans in the [Mexican Action]."  Dkt.

34 ("Preliminary Injunction") at 2.

After Sayeg failed to dismiss the required claims in the Mexican Action, Citigroup moved for an order finding Sayeg in civil contempt for violating the Preliminary Injunction. *See* Dkts. 41, 42. On February 28, 2022, the Court held Sayeg in contempt and imposed an escalating monetary sanction to continue until April 2, 2022 or until Sayeg complied with the Preliminary Injunction, whichever was earlier. *See* Dkt. 47 ("Contempt Order") at 8.[1] The Contempt Order also ordered Sayeg to "immediately dismiss without prejudice claims arising out of or related to the applicability or not applicability of benefits under the Plans in the Mexican Action and comply with all the other requirements in the Preliminary Injunction." *Id.*

Despite the Court's explicit Orders and the coercive fine, Sayeg has still not dismissed the required claims in the Mexican Action. *See* Dkt. 61 ("De La Vega 4/21/22 Decl.") ¶ 5. Citigroup now moves for further contempt sanctions, arguing that Sayeg continues to violate the Preliminary Injunction and is violating the Contempt Order. *See* Dkts. 58, 59 ("Motion").

## I. Discussion

The Court presumes the parties' familiarity with the facts underlying this case, which are discussed in the Opinion.[2] The Court also presumes the parties' familiarity with the legal standards used when considering a contempt motion and the requested sanctions, which the Court outlined in the Contempt Order. The Court will therefore only briefly discuss those legal standards below.

### A. Continued Contempt

"A party who violates an injunction entered by the district court faces the threat of both civil and criminal contempt." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info.*

---

[1] The Contempt Order provided that, if Sayeg failed to withdraw the required claims in the Mexican Action by March 4, 2022, he must pay to the Clerk of the Court $5,000 per day from March 4, 2022 to March 13, 2022; $10,000 per day from March 14, 2022 to March 23, 2022; and $15,000 per day from March 24, 2022 to April 2, 2022. Contempt Order at 8.

[2] The Court uses herein the definitions of terms adopted in the Opinion.

*Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004).  A court may hold a party in contempt if the moving party shows that "(1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner."  *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016); *see also Latino Officers Ass'n City of New York, Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009).

For the same reasons given in the Contempt Order, Citigroup has shown all the elements for contempt.  First, the Preliminary Injunction and Contempt Order are clear and unambiguous. Second, Sayeg's failure to withdraw any claims from the Mexican Action amounts to clear and convincing proof that he violated the Preliminary Injunction and Contempt Order.  Third, Sayeg has not diligently tried to reasonably comply with the Preliminary Injunction or Contempt Order. And again, Sayeg has disregarded the Preliminary Injunction and Contempt Order by failing to withdraw any claims that relate to the applicability or not applicability of benefits under the Plans in the Mexican Action even after the Court held him in contempt.  In fact, Sayeg has actively prosecuted the Mexican Action since the Contempt Order, including by appearing at a hearing and filing papers attacking his agreement to arbitrate.  De La Vega 4/21/22 Decl. ¶ 6.  Under these circumstances, it is appropriate to reaffirm that Sayeg has not complied with, and remains in civil contempt of, this Court's Orders.

**B.  Sanctions**

**1.  Coercive Sanctions**

Citigroup asks the Court to increase sanctions against Sayeg for his continued civil contempt by imposing an "increased daily fine of $20,000, to commence three business days after entry of the order," contending that such a fine "will effectively bring Sayeg into compliance with

the Orders."  Motion at 6.[3]  The fine proposed by Citigroup would "end the earlier of Sayeg

submitting proof that he is in compliance with the Orders or 30 days from the entry" of the new

civil contempt sanction.  *Id.*

      As discussed in the Contempt Order, a court has "broad discretion to design a remedy that

will bring about compliance."  *Paramedics Electromedicina Comercial, Ltda.*, 369 F.3d at 657

(quotations omitted).  When fashioning coercive sanctions, a court considers "(1) the character and

magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of

any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources

and the consequent seriousness of the burden of the sanction upon him."  *Dole Fresh Fruit Co. v.

United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987); *accord Paramedics Electromedicina

Comercial, Ltda.*, 369 F.3d at 658.  In considering these factors, the contemnor bears the burden

to show a lack of financial resources to prevent imposing monetary sanctions.  *Id.*

      When an existing fine has not secured compliance with a court's orders, courts will often

"increase the amount of a per diem fine."  *Sistem Mühendislik Insaat Sanayi Ve Ticaret, A.Ş. v.

The Kyrgyz Republic*, No. 12 Civ. 4502 (ALC) (RWL), 2020 WL 7890222, at *3 (S.D.N.Y. Nov.

5, 2020) (collecting cases), *report and recommendation adopted*, 2021 WL 39582 (S.D.N.Y. Jan.

5, 2021).  As long as there remains a "realistic possibility" of a coercive sanction having a coercive

---

[3] Before imposing sanctions on "an individual charged with civil contempt, due process requires that the person receive notice and an opportunity to be heard."  *Ginter Logistics Serv. Co. v. ACH Freight Forwarding, Inc.*, No. 07 Civ. 8677 (LAP), 2010 WL 4455402, at *2 (S.D.N.Y. Oct. 21, 2010) (quotations omitted).  Sayeg had sufficient notice and an opportunity to be heard because Citigroup served its motion for increased sanctions on Sayeg, the Court's Order setting the briefing schedule for the motion for increased sanctions, and the Court's Order extending the briefing schedule for the motion for increased sanctions.  *See id.* ("A motion itself can constitute a form of notice and provide a person with an opportunity to be heard."); Dkt. 51 (affidavit of service of the Court's scheduling Order); Dkt. 57 (affidavit of service of the Court's extension Order); Dkt. 63 (affidavit of service of the Motion).

effect, the sanction retains its remedial characteristics. *Simkin v. United States*, 715 F.2d 34, 37 (2d Cir. 1983). And it is the contemnor that bears the burden "to demonstrate that no . . . realistic possibility exists" that the coercive sanction will cause compliance. *Id.* But when no realistic possibility of compliance exists, the sanctions should end. At that point, the sanctions "lose their remedial characteristics and take on more of the nature of punishment." *Soobzokov v. CBS, Inc.*, 642 F.2d 28, 31 (2d Cir. 1981).

Here, the Court concludes that coercive sanctions remain warranted, and that an additional fine at $15,000 per day, for up to another thirty-day period, would create a realistic possibility of securing compliance without being punitive. In fashioning that sanction, the Court first finds that Citigroup faces irreparable harm by Sayeg's continued non-compliance with the Preliminary Injunction and Contempt Order. As the Court has explained more than once, Citigroup will have suffered irreparable harm if "forced to litigate rather than arbitrate this dispute." Opinion at 17 (quotations and alterations omitted); Contempt Order at 5. And Sayeg has exacerbated the harm since the Contempt Order. On March 9, 2022, there was a hearing in the Mexican Action in which Sayeg "filed papers that affirmatively attacked his agreement to arbitrate as allegedly invalid and insisted on Mr. Sayeg's right to continue prosecuting all of his claims in Mexico." De La Vega 4/21/22 Decl. ¶ 6. This continued harm can be prevented only by Sayeg complying with the Preliminary Injunction and Contempt Order, and withdrawing any claims in the Mexican Action that fall within the scope of the arbitration agreements in the Plans.

Second, the Court finds that an increased monetary sanction would be "an efficacious means of enforcing the [Preliminary] Injunction" and Contempt Order. *Jolen, Inc. v. Kundan Rice Mills, Ltd.*, No. 19 Civ. 1296 (PKC), 2019 WL 2949988, at *4 (S.D.N.Y. July 9, 2019). Given that Sayeg has refused to appear before this Court and comply with its Orders, the Court finds that

the proposed sanctions "would incentivize" Sayeg to comply with the Preliminary Injunction and Contempt Order. *United States v. Jiffy Cleaners of Hartsdale, Inc.*, No. 16 Civ. 2428 (VB), 2020 WL 4284155, at *6 (S.D.N.Y. July 27, 2020). As the Court has recognized, Sayeg appears to have significant financial resources, based on his prior salary, his termination agreement with Banamex, and his current employment. *See* Contempt Order at 5. And at this point, the continued imposition of a $15,000 fine for up to another thirty days would be an effective means of enforcing this Court's orders, because there is a realistic possibility that the fine will coerce Sayeg to comply. In other words, imposing an additional fine of $15,000 per day, for a finite period, "is a modest next step to coerce [Sayeg] into complying with [the Court's] . . . orders." *Sistem Mühendislik Insaat Sanayi Ve Ticaret, A.Ş.*, 2020 WL 7890222, at *6.

Third, imposing the additional sanction would not "wreak ruinous financial consequences" on Sayeg. *Jiffy Cleaners of Hartsdale, Inc.*, 2020 WL 4284155, at *6 (quotations omitted). As the Court has explained, it has no "reason to think that Sayeg lacks the financial resources to pay this fine." Contempt Order at 6. Again, Sayeg earned millions of dollars while he was employed as a senior executive at Banamex, Banamex paid him approximately $3.5 million as part of his termination agreement, and Sayeg now serves as the chief executive officer of an asset management firm that manages close to $2 billion in assets. *Id.*

Under these circumstances, a $15,000 daily fine will encourage Sayeg to comply with this Order, the Preliminary Injunction, and the Contempt Order without imposing excessive hardship. *See United States v. Mongelli*, 2 F.3d 29, 30 (2d Cir. 1993) (affirming order increasing fine from $4,000 to $10,000 per day for failing to comply with previous contempt order for individuals who were "individually wealthy and have access to family funds as well"). The Court also finds that having this fine continue for at most another thirty days, without further findings justifying a fine

6

beyond that end date, will ensure that the fine does not become punitive. If there continues to be non-compliance at the end of those thirty days, the additional fine will be $450,000 for a total fine, including the $300,000 already assessed, of $750,000.

### 2. Compensatory Sanctions

Besides coercive sanctions, Citigroup also seeks attorneys' fees and costs for having to defend against Sayeg's claims in the Mexican Action since the Contempt Order and for bringing this Motion. Motion at 6-7. For compensatory sanctions, a court "should reimburse the injured party for its actual damages." *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1353 (2d Cir. 1989). So even though compensatory sanctions need not precisely match losses, "the sanction should correspond at least to some degree with the amount of damages." *Paramedics Electromedicina Comercial, Ltda.*, 369 F.3d at 658 (quotations omitted). And when a district court finds willful contempt, the court "would need to articulate persuasive grounds for any denial of compensation for the reasonable legal costs of the victim of contempt." *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996). A person commits willful contempt when he "had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99 Civ. 10175 (KMW), 2021 WL 3418475, at *17 (S.D.N.Y. Aug. 5, 2021) (quotations omitted).

The Court again finds that Sayeg is in willful contempt. Sayeg "had notice of the Preliminary Injunction [and Contempt Order], failed to seek to modify [the Orders], and did not make a good faith effort to comply with [the Orders]." Contempt Order at 7-8 (cleaned up). And since the Contempt Order, Sayeg has actively prosecuted the Mexican Action. *See* De La Vega 4/21/22 Decl. ¶¶ 5-6. The Court will therefore grant Citigroup's attorneys' fees and costs for

defending Sayeg's claims that must be withdrawn in the Mexican Action since the Contempt Order and for bringing this Motion.

## II.  Conclusion

For all the reasons given, the Court grants Citigroup's motion to hold Sayeg in civil contempt.  The Court orders that:

- Sayeg must immediately dismiss without prejudice claims arising out of or related to the applicability or not applicability of benefits under the Plans in the Mexican Action and comply with all the other requirements in the Preliminary Injunction.

- If Sayeg has not withdrawn the required claims in the Mexican Action by May 31, 2022, he must pay the Clerk of Court an additional daily fine of $15,000 per day until he does so.  That daily fine will continue for thirty days starting on May 31, 2022 or until Sayeg withdraws the required claims in the Mexican Action, whichever is earlier. And if he withdraws the required claims before May 31, 2022, no further fine will be imposed.

- Sayeg must reimburse Citigroup for its reasonable attorneys' fees and costs that it incurred in defending Sayeg's claims that must be withdrawn in the Mexican Action since the Contempt Order and in bringing this Motion.  Citigroup must submit documentation of its reasonable attorneys' fees and costs that it incurred in defending such claims in the Mexican Action since the Contempt Order and in moving for further contempt sanctions by June 6, 2022.  Sayeg may submit a response by June 20, 2022. If Citigroup wishes to submit a reply, it must do so by June 27, 2022.

Citigroup must immediately serve a copy of this Order on Sayeg, with proof of service filed on the docket by May 24, 2022.  The Clerk of the Court is respectfully directed to close the motion pending at Docket Number 58.

SO ORDERED.

Dated: May 23, 2022
New York, New York

_____
JOHN P. CRONAN
United States District Judge