UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
CITIGROUP INC., :
:
Petitioner, :
: 21 Civ. 10413 (JPC)
-v- :
: OPINION AND ORDER
:
LUIS SEBASTIAN SAYEG SEADE, :
:
Respondent. :
:
------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Petitioner Citigroup Inc. ("Citigroup") moves the Court to confirm a final arbitration award in its favor against Respondent Luis Sebastian Sayeg Seade ("Sayeg"). Sayeg has not appeared in this action nor opposed the motion. Because none of the grounds for refusing to confirm an arbitration award articulated in the Inter-American Convention on International Commercial Arbitration are present here, and because Sayeg has not moved to vacate the award, let alone established that any grounds for vacatur under the Federal Arbitration Act ("FAA") apply, the Court grants the motion in its entirety.

### I. Facts and Procedural Background

The Court has addressed the facts underlying this dispute at length in its previous opinions and orders which compelled arbitration and granted injunctive relief, *see Citigroup Inc. v. Sayeg*, No. 21 Civ. 10413 (JPC), 2022 WL 179203 (S.D.N.Y. Jan. 20, 2022), and twice held Sayeg in civil contempt for violating that injunction, *Citigroup Inc. v. Sayeg*, No. 21 Civ. 10413 (JPC), 2022 WL 596073 (S.D.N.Y. Feb. 28, 2022), *Citigroup Inc. v. Sayeg*, No. 21 Civ. 10413 (JPC), 2022

WL 1620298 (S.D.N.Y. May 23, 2022).  The Court assumes familiarity with those opinions and here recounts only those facts necessary for resolving this motion to confirm the arbitration award.

In short, Sayeg was formerly employed by Banco Nacional de México, S.A., Integrante del Grupo Financiero Banamex ("Banamex"), which is a wholly-owned indirect subsidiary of Citigroup, Dkt. 1 ("Petition") ¶ 14, organized under the laws of Mexico and with its principal place of business in Mexico. Dkt. 8 ("Sirgado Declaration") ¶ 3.  During that employment, Sayeg participated in various incentive plans (the "Plans").  *See, e.g.*, Petition, Exh. A; Sirgado Declaration ¶¶ 5-6, Exhs. 1-9.  Under the Plans, Citigroup granted Sayeg deferred stock and cash awards in 2018 and 2019.  Sirgado Declaration, Exhs. 2 ("2018 Award Agreement"), 5 ("2019 Award Agreement").  These awards each contained an identical arbitration clause, which read:

> **Arbitration.**  Any disputes related to the Awards will be resolved by arbitration in accordance with the Company's arbitration policies. In the absence of an effective arbitration policy, Participant understands and agrees that any dispute related to an Award will be submitted to arbitration in accordance with the rules of the American Arbitration Association. To the maximum extent permitted by law, and except where expressly prohibited by law, arbitration on an individual basis will be the exclusive remedy for any claims that might otherwise be brought on a class, representative or collective basis. Accordingly, Participant may not participate as a class or collective action representative, or as a member of any class, representative or collective action, and will not be entitled to a recovery in a class, representative or collective action in any forum. Any disputes concerning the validity of this class, representative or collective action waiver will be decided by a court of competent jurisdiction, not by an arbitrator.

2018 Award Agreement § 14(a); 2019 Award Agreement § 14(a).

At the end of Sayeg's employment in 2019, he and Banamex executed a termination and release of Banamex and Citigroup's obligations to Sayeg in exchange for $71,526,366.00 Mexican Pesos. Dkt. 9 ("De La Vega Declaration") ¶ 4, Exh. 1 ("Termination and Release") § 3; Sirgado Declaration ¶ 4.  As part of the Termination and Release, Sayeg committed not to file suit in Mexico or the United States against Banamex, Citigroup, plan administrators, plan committees, or

plan representatives.  Termination and Release § 6.  The Termination and Release incorporated the arbitration clauses in the Award Agreements, stating that "the parties agree that, as a possible benefit following the voluntary termination of the employment relationship binding them, any dispute regarding the applicability or not applicability of the benefit will be submitted to the arbitration processes established in the Plan or Program."  *Id.* § 4.

Notwithstanding these provisions, on December 15, 2020, Sayeg initiated proceedings against Banamex in a court in Mexico, which was captioned *Luis Sebastián Sayeg Seade v. Banco Nacional de México, S.A., Integrante del Grupo Financiero Banamex*, Expediente Número: 1197/2020 (the "Mexican Action").  De La Vega Declaration ¶¶ 3, 6, Exh. 2.  In the Mexican Action, Sayeg brings, *inter alia*, claims under the Award Agreements and seeks additional compensation under the Plans and invalidation of the Termination and Release.  *See id.* ¶ 6, Exh. 2 at 22-25.

Following proceedings in the Mexican Action, *see Citigroup*, 2022 WL 179203, at *2-3, Citigroup filed a Demand for Arbitration with the American Arbitration Association ("AAA") on December 6, 2021.  Dkt. 7 ("2021 Sills Declaration") ¶ 4, Exh. 1; Dkt. 78 ("2023 Sills Declaration") ¶ 3, Exh. B ("Arbitration Demand").  In the Arbitration Demand, Citigroup sought declarations that the arbitration clauses of the Plans are valid and binding, that Sayeg has no right to any future benefits under the Plans, and that arbitration provides the sole forum for adjudicating Sayeg's claims in any way relating to or arising out of the Plans.  Arbitration Demand at 9-10.  Citigroup further sought an order enjoining Sayeg from commencing or prosecuting any litigation related to the Plans and directing Sayeg to immediately cease such litigation.  *Id.* at 10-11.  That same day, Citigroup initiated this action seeking an order compelling Sayeg to participate in arbitration and further seeking injunctive relief to end the Mexican Action.  Petition at 8.

The Court then entered a temporary restraining order restraining and enjoining Sayeg from commencing or further prosecuting any action in Mexico or elsewhere against Citigroup arising out of or relating to the Plans, other than in arbitration, Dkt. 20, and later entered a preliminary injunction to similar effect, Dkt. 22.  On January 20, 2022, the Court granted Citigroup's petition to compel arbitration and further ordered Sayeg to move to withdraw any claims in the Mexican Action arising out of or related to the Plans. *Citigroup*, 2022 WL 179203, at *10; Dkt. 34.[1]

On April 1, 2022, the International Centre for Dispute Resolution ("ICDR"), a division of the AAA, sent Citigroup and Sayeg a notice that Jack Levin (the "Arbitrator") had been appointed as the sole arbitrator in their arbitration.  2023 Sills Declaration ¶ 5, Exh. D.  On May 27, 2022, Citigroup then filed an Amended Demand for Arbitration, 2023 Sills Declaration ¶ 6, Exh. E, which was served on Sayeg in late May 2022 via FedEx, fax, and the lawyer representing Sayeg in the Mexican Action, *id.* ¶ 7, Exh. F.  Citigroup sought a summary disposition on August 19, 2022, *id.* ¶ 8; *see also id.*, Exh. I ("Arbitration Order") at 5, and served the application for that summary disposition on Sayeg in late August 2022 again via FedEx, fax, and his counsel in the Mexican Action, *id.* ¶ 9, Exh. H.

The Arbitrator issued an order on Citigroup's application for a summary disposition on November 9, 2022.  *Id.* ¶ 10, *see* Arbitration Order.  Noting that Sayeg had failed to appear in the arbitration even though all submissions had been sent to him, Arbitration Order ¶ 4, the Arbitrator reviewed the factual allegations underlying the arbitration demand, *id.* ¶¶ 5-37, as well as the procedural background, *id.* ¶¶ 38-49, and determined that Sayeg had breached the arbitration agreements of the Plans and the Termination and Release by filing the Mexican Action, *id.* ¶ 56.

---

[1] On January 20, 2022, the Court issued an amended preliminary injunction that continued the injunctive relief for the pendency of the arbitration and directed Sayeg to participate in the arbitration. Dkt. 34.

The Arbitrator further determined that Sayeg had breached the Plans by failing to return certain amounts paid to him by Citigroup after a determination that he was not entitled to those funds, *id.* ¶¶ 65-66, that Sayeg had breached his fiduciary duty to Citigroup, *id.* ¶¶ 67-73, that Citigroup was entitled to pre- and post-award interest on its claims, *id.* ¶¶ 74-75, and that Citigroup was entitled to its reasonable attorneys' fees and costs incurred in the arbitration, *id.* at 24.  The Arbitrator, however, denied Citigroup's request for its legal costs and expenses incurred in defending against the Mexican Action and in seeking an order compelling arbitration and the preliminary injunction in this action, *id.* ¶ 59.

The Arbitration Order was then incorporated by reference into a January 25, 2023 final award, Dkt. 75, Exh. 2 (the "Final Award"), which permanently enjoined Sayeg "from commencing or prosecuting any litigation related to or arising out of the Plans," *id.* at 4, ordered Sayeg to "cease the prosecution of and dismiss any litigation related to or arising out of the Plans before the courts or agencies of Mexico or otherwise, including the Mexican Action," *id.*, ordered Sayeg to pay Citigroup "10,275,294.98 Mexican Pesos, 38,560.12 United States Dollars and 32,231.76 shares of common stock of Citigroup Inc. or their fair market value as of January 31, 2022, together with pre-award interest on the foregoing amounts at the rate of 4% per annum," *id.*, ordered Sayeg to pay Citigroup's attorneys' fees and costs incurred in connection with the investigation and prosecution of the arbitration in the amount of $136,761.00 in fees and $9,458.44 in costs, *id.*, and ordered Sayeg to pay the additional amount of $42,025.00 in administrative fees for the ICDR and compensation for the Arbitrator, *id.*

On January 27, 2023, Citigroup filed a letter motion seeking a conference regarding a forthcoming motion to confirm the Final Award.  Dkt. 75.  The Court determined that a conference was not necessary and set a briefing schedule for the motion.  Dkt. 76.  As Sayeg had failed to

5

appear in this action, the Court noted that if he failed to oppose the motion, the Court would treat the motion as an unopposed motion for summary judgment in accordance with *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109-10 (2d Cir. 2006). Dkt. 76.

On February 16, 2023, Citigroup moved to confirm the Final Award. Dkts. 77-79. Citigroup served that motion on Sayeg and his counsel in the Mexican Action via email, fax, and FedEx that same day. Dkt. 80 ¶¶ 3-4. Sayeg has not filed an opposition. Therefore, as discussed below, the Court treats the motion as an unopposed motion for summary judgment.

## II. Discussion

Citigroup moves under the Inter-American Convention on International Commercial Arbitration, Jan. 30, 1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245 (the "Panama Convention"), and its implementing legislation at 9 U.S.C. § 301, *et seq.*, for confirmation of the Final Award. Petition ¶ 6. As Citigroup is a Delaware corporation while Sayeg is a citizen of Mexico, *see id.* ¶¶ 8-9, the Panama Convention applies to this dispute. *See Sanluis Devs., L.L.C. v. CCP Sanluis, L.L.C.*, 498 F. Supp. 2d 699, 702 (S.D.N.Y. 2007) ("[The Panama Convention] applies when an arbitration arises from a commercial relationship between citizens of signatory nations, in this case, the United States and Mexico."); 9 U.S.C. § 202 ("An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of

business in the United States."); 9 U.S.C. § 302 (incorporating 9 U.S.C. § 202 into the Panama Convention's implementing legislation and explaining that "for the purposes of this chapter 'the Convention' shall mean the [Panama] Convention").

Title 9, United States Code, Section 302 specifically incorporates by reference 9 U.S.C. § 207, which states:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

*Id.* Those "grounds for refusal or deferral of recognition or enforcement" are enumerated in the Panama Convention as follows:

1. The recognition and execution of the decision may be refused, at the request of the party against which it is made, only if such party is able to prove to the competent authority of the State in which recognition and execution are requested:

    a. That the parties to the agreement were subject to some incapacity under the applicable law or that the agreement is not valid under the law to which the parties have submitted it, or, if such law is not specified, under the law of the State in which the decision was made; or

    b. That the party against which the arbitral decision has been made was not duly notified of the appointment of the arbitrator or of the arbitration procedure to be followed, or was unable, for any other reason, to present his defense; or

    c. That the decision concerns a dispute not envisaged in the agreement between the parties to submit to arbitration; nevertheless, if the provisions of the decision that refer to issues submitted to arbitration can be separated from those not submitted to arbitration, the former may be recognized and executed; or

    d. That the constitution of the arbitral tribunal or the arbitration procedure has not been carried out in accordance with the terms of the agreement signed by the parties or, in the absence of such agreement, that the constitution of the arbitral tribunal or the arbitration procedure has not

      been carried out in accordance with the law of the State where the arbitration took place; or

    e. That the decision is not yet binding on the parties or has been annulled or suspended by a competent authority of the State in which, or according to the law of which, the decision has been made.

2. The recognition and execution of an arbitral decision may also be refused if the competent authority of the State in which the recognition and execution is requested finds:

    a. That the subject of the dispute cannot be settled by arbitration under the law of that State; or

    b. That the recognition or execution of the decision would be contrary to the public policy ("ordre public") of that State.

Panama Convention art. V.

Where, like here, "the arbitration took place in the United States," the award also is "subject to the FAA provisions governing domestic arbitration awards." *Zeiler v. Deitsch*, 500 F.3d 157, 164 (2d Cir. 2007) (applying the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention")); *see Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 45 (2d Cir. 1994) (rejecting an argument that caselaw regarding the New York Convention was inapposite to a dispute involving the Panama Convention because "Congress intended the [Panama] Convention to reach the same results as those reached under the New York Convention"); *Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploración y Producción*, 962 F. Supp. 2d 642, 653 (S.D.N.Y. 2013) (observing that "precedents under [the New York Convention] are generally applicable to [the Panama Convention]") *aff'd* 832 F.3d 92 (2d Cir. 2016). Section 10(a) of the FAA enumerates four grounds for vacatur of an arbitration award:

    (1) where the award was procured by corruption, fraud, or undue means;

> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). It is beyond cavil that judicial review of an arbitration award under the FAA—consistent with the Convention—is "very limited . . . to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993) (citation omitted).

Sayeg has not appeared in this action or opposed Citigroup's motion to confirm the arbitration award. But even if a motion to confirm is unopposed, a court must still ensure that judgment is proper as a matter of law under the undisputed facts. "[D]efault judgments in the context of confirmation and vacatur proceedings are 'generally inappropriate'"; an "unopposed [motion] should instead be resolved under a summary judgment framework." *Cessna Fin. Corp. v. Gulf Jet LLC*, No. 14 Civ. 2149 (ALC), 2015 WL 337556, at *3 (S.D.N.Y. Jan. 26, 2015) (citing *D.H. Blair & Co.*, 462 F.3d at 109-10). Such a motion is treated as "an unopposed motion for summary judgment," *D.H. Blair & Co.*, 462 F.3d at 110, meaning that a court:

> may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented*.

*Id.* (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)).

Setting aside the fact that the "heavy" burden of showing a ground for refusing to confirm the arbitration award falls on Sayeg, *see Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009) (quoting *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005)), who has not appeared or opposed the motion to confirm, the Court determines that confirmation of the Final Award is proper.  Based on Citigroup's motion papers, including the Final Award, there are no material issues of fact for trial.  There is no indication that any of the specific grounds for refusing to recognize an arbitral award under the Panama Convention are satisfied in this case.  First, no evidence indicates that Sayeg was subject to any incapacity or that the relevant agreements are invalid.  Second, Sayeg was notified of the arbitration, the selection of the Arbitrator, and the applicability of ICDR rules, 2023 Sills Declaration, Exh. D at 3-4, and simply chose not to appear.  Third, there is no reason to believe that the arbitration concerned a dispute not envisioned in the parties' agreement to submit to arbitration, and the Arbitrator determined that he had jurisdiction, Arbitration Order ¶ 14 n.3, after this Court determined that the question of arbitrability had been delegated to the arbitrator, *Citigroup*, 2022 WL 179203, at *7.  Fourth, nothing indicates that the Arbitrator was selected, or the arbitration conducted, in a manner contrary to the law of the United States, as both acts were performed in accordance with ICDR rules.  2023 Sills Declaration, Exh. D at 4; Arbitration Order ¶ 18.  Fifth, there is no indication that the decision has been annulled or suspended.  Sixth, as stated, the Court referred the question of arbitrability to the arbitrator, *Citigroup*, 2022 WL 179203, at *7, and nothing indicates that the subjects of the arbitration could not be resolved under New York or United States law.  And finally, the Court sees no grounds for determining that the recognition of the Final Award would be contrary to public policy.  Similarly, while Sayeg has not

moved to vacate the Final Award, there is nothing in the record to suggest that any of the grounds for vacatur in section 10(a) of the FAA apply in this case.

Having determined that none of the enumerated grounds for refusing confirmation of an arbitration award under the Panama Convention or for vacatur under section 10(a) of the FAA apply, the Court grants Citigroup's motion to confirm the Final Award.

### III. Conclusion

For the reasons discussed above, the Court grants the motion to confirm the Final Award in its entirety. The Clerk of Court is respectfully directed to enter judgment confirming the Final Award as a judgment of this court and to close this case.

SO ORDERED.

Dated: June 26, 2023
New York, New York

_____
JOHN P. CRONAN
United States District Judge